1

2

3

4

5

6

7

8                                          UNITED STATES DISTRICT COURT

9                                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11      STEPHANIE HIVES,                                    No.  2:14-cv-2953-CKD

12                          Plaintiff,

13             v.                                           ORDER

14      CAROLYN W. COLVIN, Acting
        Commissioner of Social Security,
15
                            Defendant.
16

17

18             Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19      ("Commissioner") denying applications for Disability Income Benefits ("DIB") and

20      Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act

21      ("Act"), respectively.  For the reasons discussed below, the court will deny plaintiff's motion for

22      summary judgment and grant the Commissioner's cross-motion for summary judgment.

23      I.     BACKGROUND

24             Plaintiff, born September 30, 1966, applied on January 22, 2009 for DIB and on January

25      13, 2009 for SSI, alleging disability beginning December 1, 2007.  Administrative Transcript

26      ("AT") 39, 238-44, 314.  Plaintiff alleged she was unable to work due to knee and lower back

27      ////

28      ////

                                                        1

pain, asthma, posttraumatic stress, anxiety, and depression.  AT 24-25.  In a decision dated April 19, 2013, the ALJ determined that plaintiff was not disabled.[1]  AT 18-31.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1.  The claimant meets the insured status requirements of the Social Security Act through March 31, 2013.
>
> 2.  The claimant has not engaged in substantial gainful activity since December 1, 2007, the alleged onset date.
>
> 3.  The claimant has the following severe impairments: obesity, asthma, depression, posttraumatic stress disorder, and personality disorder.
>
> 4.  The claimant does not have an impairment or combination of

---

[1]    Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76,  416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl.   She cannot climb ladders, ropes or scaffolds.   She should avoid concentrated exposure to fumes, gases, and dusts, and cannot work around hazards.  She can perform simple and detailed tasks with occasional interaction with coworkers, supervisors and the public.

6.  The claimant is unable to perform any past relevant work.

7.  The claimant was born on September 30, 1966 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8.  The claimant has at least a high school education and is able to communicate in English.

9.   The transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills.

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.  The claimant has not been under a disability, as defined in the Social Security Act, from December 1, 2007, through the date of this decision.

AT 20-31.

## II.    ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) improperly assessed the medical opinion evidence when determining plaintiff's residual functional capacity ("RFC"); (2) failed to properly consider the impact of plaintiff's obesity at step five of the sequential evaluation; (3) improperly found plaintiff's testimony less than fully credible; and (4) improperly discounted the third party lay witness report of Samantha Earnshaw, plaintiff's case manager.

/////

/////

3

1    III.    LEGAL STANDARDS

2         The court reviews the Commissioner's decision to determine whether (1) it is based on

3    proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

4    as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial

5    evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340

6    F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

7    mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th

8    Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  "The ALJ is

9    responsible for determining credibility, resolving conflicts in medical testimony, and resolving

10   ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

11   "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

12   rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

13        The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th

14   Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's

15   conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not

16   affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see

17   also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the

18   administrative findings, or if there is conflicting evidence supporting a finding of either disability

19   or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,

20   1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in

21   weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

22   IV.    ANALYSIS

23        A.    The ALJ did not Err in Weighing the Medical Opinion Evidence in the Record

24        First, plaintiff argues that the ALJ erred in weighing the medical opinion evidence in the

25   record when determining plaintiff's RFC.  More specifically, she asserts that the ALJ improperly

26   gave "little weight" to the opinions of Dr. Weil, Dr. Williams Moller, and Dr. Scarmon, "some

27   weight" to the opinion of Dr. Garfinkel, and "significant weight" to the opinions of Dr. Diagle

28   and Dr. Ochitill.

4

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence.  Id. at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

### 1.  *Dr. Weil*

On June 22, 2006, Dr. Weil, an examining psychologist, issued a report regarding her psychiatric examination of plaintiff to determine whether plaintiff was permanently disabled pursuant to the California State Workers' Compensation guidelines in connection with a psychologically traumatic event that plaintiff experienced while at work on July 22, 2005.  AT 350-66.  The examination consisted of a clinical interview, a review of plaintiff's medical records, and psychological testing.  AT 351.  Based on the examination, Dr. Weil diagnosed plaintiff with posttraumatic stress disorder, generalized anxiety disorder, and assessed her with a

1  Global Assessment of Functioning ("GAF") score of 65, indicating mild-to-moderate difficulty in

2  social occupational functioning.  AT 359-60.  Dr. Weil further noted that her findings indicated

3  that plaintiff was "experiencing mild-to-moderate levels of emotional distress."  AT 360.  Based

4  on these findings, Dr. Weil determined that plaintiff had been totally temporarily disabled from

5  July 22, 2005, and that "her psychiatric condition will have reached the permanent and stationary

6  status and maximum medical improvement by November 1, 2006" with appropriate treatment.

7  AT 361-62.  With regard to functional limitations, Dr. Weil opined that plaintiff had "mild to

8  moderate" limitations in her abilities to comprehend and follow instructions and to perform

9  simple and repetitive tasks.  AT 363.  She further opined that plaintiff had "slight to moderate

10  impairment" in her abilities to maintain a work pace appropriate to a given workload, to perform

11  complex or varied tasks, to relate to other people beyond giving and receiving instruction, and to

12  accept and carry out responsibility for direction, control, and planning.  AT 364.  Finally, Dr.

13  Weil opined that plaintiff had a "slight" impairment in her ability to influence people.  Id.

14         The ALJ provided the following reasons for assigning "little weight" to Dr. Weil's

15  opinion:

16         First, this opinion concerns the claimant's functioning during an irrelevant time
       period.  Specifically, the evaluation was made six months prior to the date that the
17     claimant alleges disability.  Second, the evaluation was made to assess disability
       under a California workers' compensation claim, rather than under the meaning of
18     a disability under the Social Security Act.  Also Dr. Weil's opinion is inconsistent
       with more recent findings of treating sources that indicate that the claimant's
19     psychiatric condition is well controlled.

20

21  AT 28-29 (citations to the record omitted).  For the reasons discussed below, the court finds that

22  this reasoning was sufficient to support the ALJ's determination regarding Dr. Weil's opinion.

23         Dr. Weil issued her opinion on June 22, 2006, almost a year and a half prior to plaintiff's

24  alleged disability onset date of December 1, 2007.  AT 350.  Moreover, Dr. Weil noted in her

25  opinion that plaintiff's mental impairments would cause only a temporary disability and opined,

26  "with reasonable medical probability, that [plaintiff's] psychiatric condition will have reached

27  permanent and stationary status and maximum medical improvement by November 1st, 2006."

28

1    AT 361.  Thus, Dr. Weil's opinion indicates that the timespan it covered predated plaintiff's

2    alleged onset date by over a year.[2]  While the ALJ appears to have incorrectly noted how far prior

3    to the alleged onset date Dr. Weil's opinion was issued, it does not diminish the ALJ's proper use

4    of the fact that Dr. Weil's opinion addressed a time span predating plaintiff's alleged onset date as

5    a reason for assigning less weight to Dr. Weil's opinion.  See Carmickle v. Comm'r, Soc. Sec.

6    Admin., 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of

7    disability are of limited relevance.").

8           Furthermore, Dr. Weil's opinion was issued for the purpose of determining whether

9    plaintiff was disabled under California's workers' compensation guidelines, not the Social

10   Security Act.  Medical opinions issued to assess claims under California's workers' compensation

11   guidelines are not conclusive for determining disability in a social security case.  Macri v. Chater,

12   93 F.3d 540, 543-44 (9th Cir. 1996) (citing Desrosiers v. Secretary of Health & Human Serv., 846

13   F.2d 573, 576 (9th Cir. 1988)) ("[T]he California Guidelines for Work Capacity are not

14   conclusive in a social security case . . . .").  While an ALJ may draw inferences logically flowing

15   from a medical opinion issued under the workers' compensation guidelines, Macri, 93 F.3d at

16   544, many of the functional areas identified in Dr. Weil's opinion were not directly translatable to

17   those considered in a social security case.  For instance, Dr. Weil opined on plaintiff's abilities to

18   influence people, to relate to other people beyond giving and receiving instruction, and to make

19   generalizations, evaluations, or decisions without immediate supervision, all of which are not

20   mental functional considerations under the Social Security Act.  Accordingly, the ALJ also

21   properly relied on the fact that Dr. Weil's opinion used evaluation standards different from those

22   used to assess disability under the Social Security Act in support of his decision to assign lesser

23   weight to that opinion.

24   /////

25   _____

26   [2] Moreover, plaintiff indicates in her motion and in the record that she sought to amend her
     alleged onset date to February 3, 2012.  AT 328.  While the ALJ still rendered his decision based
27   on plaintiff's original alleged onset date, had the plaintiff's proposed amended onset date been
     used, it would have further bolstered the ALJ's determination regarding the weight he gave to Dr.
28   Weil's opinion as it would have covered a period over five years prior to that proposed date.

1    Plaintiff argues that the ALJ's decision was still erroneous despite the fact that Dr. Weil's

2    opinion did not cover the relevant period and was made for purposes of workers' compensation

3    because the ALJ improperly determined that Dr. Weil's opinion was not supported by the mental

4    health records.  More specifically, plaintiff asserts that the mental health records the ALJ

5    referenced in support of his decision actually supported Dr. Weil's findings, therefore meaning

6    the ALJ could not legitimately use this evidence to support his reasoning.  However, even

7    assuming, without deciding, that these mental health records did not actually support the ALJ's

8    reasoning, such error would have been harmless.  See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th

9    Cir.1990) (harmless error analysis applicable in judicial review of social security cases); Molina

10   v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on

11   account of an error that is harmless").  As noted above, the ALJ gave two other specific and

12   legitimate reasons for discounting Dr. Weil's opinion that were supported by substantial

13   evidence.  Those reasons alone were a sufficient basis to support the weight the ALJ assigned to

14   Dr. Weil's opinion.  See Lester, 81 F.3d at 830.

15   Moreover, even had the ALJ given controlling weight to the functional limitations opined

16   by Dr. Weil, they would not have supported a finding that plaintiff was disabled.  Indeed, Dr.

17   Weil opined that plaintiff had no more than "mild to moderate" limitations with regard to any

18   area of mental functioning.  AT 363-64.  Furthermore, Dr. Weil opined that plaintiff's mental

19   disability that "[f]uture employment in the open labor market should be consistent with

20   [plaintiff's] emotional, cognitive, and social deficits covered in this report in the eight areas of

21   work function. . . . [Plaintiff] should be given the opportunity to return to work in an environment

22   where she feels safe and secure."  AT 365.  Accordingly, even had the ALJ erred in weighing Dr.

23   Weil's opinion, such an error would have been harmless because Dr. Weil's opinion, even if it

24   were given controlling weight, would not have supported a finding that plaintiff was disabled

25   within the meaning of the Act.

26   /////

27   /////

28   /////

8

2.   *Dr. Williams Moller*

On October 25, 2012, Dr. Williams Moller, one of plaintiff's treating psychologists, completed a check-box questionnaire with regard to the impact plaintiff's mental impairments had on her workplace functioning.  AT 474-81.  Therein, Dr. Williams Moller determined that plaintiff met a number of criteria indicating that she had an organic mental disorder, psychotic disorder, affective disorder, anxiety-related disorder, and personality disorder.  AT 474-80.  She further opined that plaintiff had a "marked" restriction in activities of daily living, meaning she was significantly impaired in this fashion at least two-thirds of the time.  AT 481.  She also found that plaintiff had an "extreme" restriction in her ability to interact appropriately with supervisors, coworkers, and the public.  Id.  In addition, Dr. Williams Moller opined that plaintiff would "often" exhibit deficiencies in concentration, persistence, or pace resulting in a failure to complete tasks in a timely manner.  Id.  Finally, Dr. Williams Moller determined that plaintiff would have "continual" episodes of deterioration or decompensation in work or work-like settings.  Id.

The ALJ gave the following reasons for finding that Dr. Williams Moller's opinion was entitled to "little weight":

> Dr. Williams Moller has provided few, if any, clinical findings, observations, or objective testing to support her opinion.  Indeed, Dr. Williams Moller states that the claimant has shown symptoms of depression in the past, but admits that she does not "at the present."  Further, Dr. Williams Moller's opinion is inconsistent with her therapy notes, which document that the claimant was able to interact appropriately with her during sessions.  Additionally, the claimant was able to resume biweekly visits with her teenage daughter.  Most telling, however, is Dr. Williams Moller's report in April 2012 that the claimant had resumed work performing home health care for two clients.  Although this work did not continue, the claimant did not stop working due to her impairments.  Rather, those jobs ended due to the deaths of the clients.  Moreover, the claimant reported that she was hoping to find other work "soon."

AT 28 (citations to the record omitted).

The ALJ appropriately discounted Dr. Williams Moller's opinion on the basis that her treatment notes provide few clinical findings, observations, or objective test results to support her opinion.  While Dr. Williams Moller's treatment notes show that she treated plaintiff over an 8-

1   month period and that she held over a dozen therapy sessions with plaintiff in that time, they do

2   not show that Dr. Williams Moller conducted any clinical testing of plaintiff's psychiatric

3   impairments or made any distinct observations or findings that would support the extreme

4   limitations and mental complications she provided in her opinion.  See AT 486-88.  In particular,

5   Dr. Williams Moller opined that plaintiff exhibited signs of an organic mental disorder without

6   further explanation and without any clinical support from her own treatment records or other

7   records she had reviewed.  See AT 474, 486-88.  Furthermore, as the ALJ noted, Dr. Williams

8   Moller qualified many of her findings by stating that plaintiff had experienced them in the past,

9   but was not experiencing them at that time.  AT 475, 477.  Finally, the ALJ also appropriately

10  noted the significance of the fact that Dr. Williams Moller stated in her treatment notes that

11  plaintiff had been working as a home health care worker for two separate clients and stopped that

12  work due to circumstances not resulting from plaintiff's mental impairments.  These notes

13  conflicted with Dr. Williams Moller's opinion that plaintiff experienced "continual" episodes of

14  deterioration or decompensation in work or work-like settings.  In sum, the ALJ properly relied

15  on the lack of objective medical evidence supporting Dr. Williams Moller's opinion to find that it

16  was entitled to reduced weight.  See Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008)

17  ("The incongruity between Dr. Nachenberg's Questionnaire responses and her medical records

18  provides an additional specific and legitimate reason for rejecting Dr. Nachenberg's opinion of

19  [the claimant's] limitations.").

20      Plaintiff also claims that the ALJ erred at step three of the sequential analysis because he

21  did not adopt the opinion of Dr. Williams Moller that plaintiff's mental impairments met or

22  equaled the requirements of Listing 12.06 and Listing 12.08.  However, for the reasons discussed

23  above, the ALJ properly accorded little weight to this physician's opinion.  The ALJ considered

24  in his decision whether plaintiff's impairments met the criteria for both Listing 12.06 and Listing

25  12.08 based on the evidence in the record and properly found that substantial evidence showed

26  that they did not meet or equal the criteria for either listing.  AT 23-24.  Accordingly, the ALJ did

27  not err in his consideration of Dr. Williams Moller's opinion, or the medical evidence more

28  generally, at step three.

3.      *Dr. Scarmon*

Dr. Scarmon issued a one-page physical medical assessment of plaintiff's ability to perform work-related activities on November 7, 2012.  AT 484.  Therein, he diagnosed plaintiff with chronic back pain, severe hypertension, and obesity.  Id.  Based on these diagnoses, Dr. Scarmon opined that plaintiff could occasionally lift and carry no more than 5 pounds and stand and/or walk between 1 and 2 hours total in an 8-hour workday, and for no more than half an hour at a time.  Id.  He further opined that plaintiff could sit for between 1 and 2 hours total in an 8-hour workday, and for no more than 15 to 30 minutes without interruption or having to change positions.  Id.  Dr. Scarmon also opined that plaintiff could never bend, climb, balance, stoop, crouch, kneel, crawl, reach, handle, push or pull, and could only occasionally engage in handling activities.  Id.

The ALJ assigned "little weight" to Dr. Scarmon's opinion for the reasons that follow:

> First, Dr. Scarmon only examined the claimant on two occasions in October 2012. Thus, no treating relationship has been established.  Second, his examinations reveal few, if any, objective clinical findings, aside from obesity and pain of the low back with range of motion, to support his opinion.  Moreover, his clinical notes do not establish a severe medically determinable impairment to account for all of these limitations.  Specifically, there is no medically determinable impairment to account for his proposed limitations in reaching, handling, or feeling.  Although he states she cannot sit for more than a few minutes at a time, his clinic notes are devoid of any complaints of sitting or any discussion of standing and walking difficulties.  Dr. Scarmon apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed uncritically to accept as true most, if not all, of what the claimant reported. Yet, as explained in elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints.

AT 28 (citation to the record omitted).

Plaintiff argues that the ALJ erred in assigning reduced weight to Dr. Scarmon's opinion because he incorrectly determined that he was not plaintiff's treating physician.  However, even assuming, without deciding, that the ALJ erred in drawing such a conclusion regarding Dr. Scarmon's opinion, such an error was harmless because the ALJ still provided specific and legitimate reasons for discounting Dr. Scarmon's opinion that would have been sufficient even had the ALJ found Dr. Scarmon to be a treating physician.  See Curry, 925 F.2d at 1129; Molina,

11

1   674 F.3d at 1111; Graham v. Astrue, 385 F. App'x 704, 706 (9th Cir. 2010) (unpublished) (citing

2   Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)) ("The ALJ erroneously questioned

3   whether Dr. Nelson was a treating source, but the error was harmless because the ALJ

4   nonetheless applied the correct legal standard.").

5          Indeed, the ALJ properly determined that the objective medical findings in Dr. Scarmon's

6   own treating notes did not support certain limitations he opined.  The ALJ correctly observed that

7   Dr. Scarmon's opinion that plaintiff had limitations in reaching, handling, and feeling.  See AT

8   467-68 (noting only that plaintiff was obese, had hypertension, and exhibited medical issues

9   relating to her back and knees).  Similarly, the ALJ properly determined that Dr. Scarmon's

10  findings did not support the extreme limitations he opined with regard to plaintiff's ability to sit.

11  See id.

12         Furthermore, the ALJ also properly reasoned that Dr. Scarmon's opinion appeared to rely

13  on plaintiff's subjective statements regarding the extent of her symptoms and limitations.  The

14  physical limitations Dr. Scarmon opined largely reflected those alleged by plaintiff, but did not

15  generally reflect the other medical evidence in the record, including his own treatment findings.

16  For reasons discussed in more detail below, the ALJ correctly discounted plaintiff's subjective

17  complaints regarding the intensity of her symptoms and limitations.  Accordingly, there existed

18  substantial evidence to support the ALJ's assignment of diminished weight to Dr. Scarmon's

19  opinion based on his apparent uncritical acceptance of plaintiff's subjective complaints.  Bayliss

20  v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (finding substantial evidence supported the

21  ALJ's rejection of a treating physician's opinion because that opinion "was not supported by

22  clinical evidence and was based on [the claimant's] subjective complaints").

23         In sum, these reasons provided by the ALJ were specific and legitimate, were supported

24  by substantial evidence from the record, and would have been sufficient grounds for assigning

25  little weight to Dr. Scarmon's opinion had the ALJ acknowledged him as one of plaintiff's

26  treating physicians.  See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir.

27  2004) (upholding ALJ's rejection of treating physician's opinion "because it was in the form of a

28  checklist, did not have supportive objective evidence, was contradicted by other statements and

12

1    assessments of [the claimant's] medical condition, and was based on [the claimant's] subjective

2    descriptions of pain"); Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (holding that the

3    ALJ properly discounted a treating physician's functional recommendations that "were so

4    extreme as to be implausible and were not supported by any findings made by any doctor,"

5    including the treating physician's own findings).  Accordingly, even if the ALJ had erred in

6    considering Dr. Scarmon's opinion as that of a non-treating physician, such an error was harmless

7    and remand is not warranted on that basis.

8                        4.    *Dr. Garfinkel*

9            Dr. Garfinkel, an examining physician, performed a complete internal medicine evaluation

10   of plaintiff on March 16, 2009.  AT 414-20.  As a result of this examination, Dr. Garfinkel noted

11   that plaintiff exhibited largely normal physical findings.  AT 415-17.  Based on those findings, he

12   diagnosed plaintiff with posttraumatic stress disorder, major depression, hypertension that was

13   well controlled with medication, and a history of asthma and chronic bronchitis with a currently

14   normal examination.  AT 417-18.  With regard to plaintiff's ability to perform physical work-

15   related functions, Dr. Garfinkel opined that plaintiff could lift or carry 50 pounds occasionally

16   and 25 pounds frequently, stand or walk for 6 hours in an 8-hour workday, and sit for 6 hours in

17   an 8-hour workday.  AT 418.  He further opined that plaintiff should avoid noxious fumes and

18   other pulmonary irritants and that she had no postural, manipulative, visual, or communicative

19   limitations.  Id.

20          In support of his determination that Dr. Garfinkel's opinion was entitled to "some

21   weight," the ALJ noted that his opinion was consistent with the medical evidence in the record

22   showing that plaintiff's symptoms were well controlled, but that his RFC assessment was too

23   generous in light of plaintiff's credible subjective complaints indicating that she was somewhat

24   more limited.  AT 26.

25          Plaintiff asserts that the ALJ should have assigned no weight to Dr. Garfinkel's opinion

26   because there was no evidence in the record showing that plaintiff's symptoms were well

27   controlled.  More specifically, plaintiff argues that her medical records developed both before and

28   after Dr. Garfinkel's opinion show that her blood pressure generally rose and fell dramatically,

1    therefore indicating that her symptoms were not well controlled.  However, the medical records

2    regarding the impact of plaintiff's physical impairments indicate to the contrary.  Indeed,

3    plaintiff's medical records from throughout the relevant period showed that plaintiff had normal

4    cardiovascular results and was generally asymptomatic of any cardiopulmonary diseases upon

5    examination.  E.g., AT 372, 376, 385, 387, 471.  In short, plaintiff fails to identify any evidence

6    regarding plaintiff's physical impairments or functional limitations that plausibly calls into

7    question the ALJ's assignment of some weight to Dr. Garfinkel's opinion.

8                    5.    *Dr. Diagle and Dr. Ochitill*

9           Dr. Diagle, an examining psychiatrist, conducted a complete psychiatric evaluation of

10   plaintiff on March 14, 2009 consisting of a review of plaintiff's medical records and an

11   independent psychiatric examination.  AT 407-12.  Based on this evaluation, Dr. Diagle

12   diagnosed plaintiff with posttraumatic stress disorder, partially treated; history of cocaine abuse,

13   in recent treatment and remission; history of hepatitis C and hypertension; severe psychosocial

14   stressors; and a GAF score of 60.  AT 411.  Dr. Diagle noted that plaintiff "is now doing the

15   things necessary to recover" and that he was "confident that [plaintiff] will be able to [be]

16   reemployed in a new career sometime in the future."  Id.  He further noted that he "expect[ed]

17   reasonable recovery and reemployment within the next year."  AT 412.  With regard to plaintiff's

18   ability to carry out mental work-related tasks, Dr. Diagle opined that plaintiff was "slightly

19   limited" in her abilities to follow detailed and complex instructions, to relate and interact with

20   supervisors, coworkers, and the public, and to associate with day-to-day work activity.  Id.  He

21   further opined that plaintiff was "moderately" limited in her ability to adapt to the stresses

22   common to a normal work environment, and "slightly to moderately limited" in her ability to

23   maintain concentration and attention, persistence and pace.  Id.

24          On April 7, 2009, Dr. Ochitill, a non-examining physician, issued an RFC assessment

25   regarding the impact of plaintiff's mental impairments.  AT 422-24.  Therein, Dr. Otchitill opined

26   that plaintiff had moderate limitations regarding her abilities to carry out detailed instructions, to

27   maintain attention and concentration for extended periods of time, to complete a normal

28   workweek without interruption, to interact with the public, to adapt to changes in the workplace.

1   AT 422-23.

2        The ALJ gave both Dr. Diagle's and Dr. Ochitill's opinions "substantial weight" because

3   they were generally consistent with one another and with the clinical findings elsewhere in the

4   record demonstrating that plaintiff had good control of her symptoms.  AT 27.  Plaintiff asserts

5   that this determination was erroneous with regard to Dr. Diagle because he agreed with plaintiff's

6   treating physicians in diagnosing plaintiff with posttraumatic stress disorder, therefore requiring

7   the ALJ to provide clear and convincing reasons for discounting plaintiff's treating physicians'

8   opinion in favor of his opinion.  With respect to Dr. Ochitill, plaintiff asserts that the ALJ could

9   not properly rely on his opinion because he did not conduct his own independent examination and

10   did not provide his own diagnosis of plaintiff's impairments.

11        Plaintiff's argument that Dr. Diagle's opinion did not contradict the opinions of plaintiff's

12   treating physicians simply because he also diagnosed her with posttraumatic stress disorder is not

13   well taken.  Dr. Diagle based his opinion on independent clinical findings that differed from

14   plaintiff's treating physicians and opined that plaintiff had mental limitations less severe than

15   those found in the medical opinions the ALJ discounted.  Indeed, Dr. Diagle's clinical findings

16   differed with those of plaintiff's treating physicians in a number of ways, including the GAF

17   score he assessed, and were based on psychiatric testing that differed from that used by plaintiff's

18   treating physicians.  E.g., compare AT 407-12 with AT 350-66.  Just because he diagnosed

19   plaintiff with posttraumatic stress disorder as her treating physicians had does not mean his

20   clinical findings did not otherwise differ from those on which the treating physicians' opinions

21   were based.  Accordingly, the ALJ had to provide only specific and legitimate reasons for

22   discounting the opinions of plaintiff's treating physicians.  See Magallanes, 881 F.2d at 751.  The

23   ALJ's reliance on the conflicting opinion of Dr. Diagle, which was based on that physician's own

24   independent clinical findings, was one such specific and legitimate reason.  See id.; Andrews, 53

25   F.3d at 1041 (an examining physician's opinion can constitute substantial evidence when it "is

26   based on independent clinical findings").  Furthermore, as the ALJ determined, Dr. Diagle's

27   opinion was generally consistent with the objective medical findings in the record, thus lending

28   further support to the ALJ's decision to assign it greater weight.  See 20 C.F.R. §§

1   404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a

2   whole, the more weight we will give to that opinion.").

3          Similarly, the ALJ was permitted to assign greater weight to the opinion of Dr. Ochitill.

4   Plaintiff argues that the ALJ could not give credence to his opinion because he completed an RFC

5   assessment without providing a diagnosis of plaintiff's medically determinable impairments.

6   However, Dr. Ochitill did indicate such a diagnosis by noting at the beginning of his opinion that

7   plaintiff's impairments fell within the anxiety-related disorders considered under Listing 12.06.

8   AT 422.  Furthermore, because Dr. Ochitill's opinion was supported by both Dr. Diagle's similar

9   RFC opinion and the medical record as a whole, the ALJ was permitted to assign greater weight

10  to it over those of plaintiff's treating physicians.  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.

11  2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial

12  evidence when the opinions are consistent with independent clinical findings or other evidence in

13  the record."); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) ("Although the contrary

14  opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason

15  for rejecting a treating or examining physician's opinion, it may constitute substantial evidence

16  when it is consistent with other independent evidence in the record.").

17          B.      The ALJ did not err in Considering Plaintiff's Obesity at Step Five

18          Next, plaintiff argues that the ALJ erred by not properly considering the impact of her

19  obesity at step five of the sequential analysis.  Specifically, she asserts that the ALJ failed to

20  consider the effect plaintiff's obesity had on her ability to balance, stoop, and crouch, despite

21  finding that her obesity was a severe impairment at step two.  She contends further that the ALJ

22  failed to provide any limitations based on obesity in the hypotheticals he posed to the vocational

23  expert during the administrative hearing in this matter, therefore making his reliance on the

24  vocational expert's testimony in making his step five determination erroneous.  These arguments

25  are not well taken.

26          When determining plaintiff's RFC, the ALJ properly weighed and considered the

27  evidence in the record regarding plaintiff's obesity and the impact it had on her ability to perform

28  workplace functions.  Plaintiff appears to suggest that this was not the case because the ALJ did

16

1   not specifically discuss how plaintiff's obesity contributed to the symptoms caused by the mild

2   degenerative changes in plaintiffs back shown by certain x-ray results in the record.  However,

3   the ALJ's decision clearly shows that he considered the entire record when determining plaintiff's

4   RFC, AT 24, which included objective clinical findings regarding plaintiff's obesity and other

5   impairments and opinion evidence interpreting that evidence and drawing conclusions regarding

6   the effect plaintiff's impairments had on her ability to perform individual workplace functions,

7   including her abilities to balance, stoop, and crouch.  As discussed above, the ALJ properly

8   considered and weighed this opinion evidence in drawing his RFC conclusion that served the

9   basis for his step five determination.  Plaintiff has not set forth, and there is no evidence in the

10   record of, any functional limitations resulting from or exacerbated by her obesity that the ALJ

11   failed to consider.  Similarly, the hypotheticals the ALJ posed to the vocational expert during the

12   administrative hearing incorporated all of the limitations and restrictions that comprised the

13   ALJ's appropriately-arrived-at RFC determination.  Accordingly, the ALJ's use of the vocational

14   expert's testimony in response to those hypotheticals was not in error.  See Burch v. Barnhart,

15   400 F.3d 676, 684 (9th Cir. 2005) (rejecting plaintiff's argument "that the ALJ should have

16   included obesity in the hypothetical to the vocational expert" because "[t]he ALJ presented all of

17   [plaintiff's] limitations and restrictions supported by the record to the vocational expert").

18       C.    The ALJ's Adverse Credibility Determination was not Erroneous

19       Finally, plaintiff argues that the ALJ erred by determining that plaintiff's testimony

20   regarding the intensity, persistence, and limiting effects of her symptoms was not entirely

21   credible.  This argument is not well taken.

22       The ALJ determines whether a disability applicant is credible, and the court defers to the

23   ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g.,

24   Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an

25   explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v.

26   Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

27   supported by "a specific, cogent reason for the disbelief").

28   /////

17

1    In evaluating whether subjective complaints are credible, the ALJ should first consider

2    objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947 F.2d 341,

3    344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ

4    then may consider the nature of the symptoms alleged, including aggravating factors, medication,

5    treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the

6    applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

7    testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

8    prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d

9    1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-

10   01; SSR 88-13.  Work records, physician and third party testimony about nature, severity and

11   effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.

12   Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek

13   treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ

14   in determining whether the alleged associated pain is not a significant non-exertional impairment.

15   See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part,

16   on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir.

17   1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6

18   (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering, the

19   Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."

20   Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

21       Here, the ALJ provided the following extensive discussion regarding his reasons in

22   support of his adverse credibility determination:

23       The claimant's allegations of physical difficulties are inconsistent with clinical
24       indications that her condition is relatively controlled.  Despite alleging breathing
         difficulties, physical examinations of the chest have revealed no significant
25       findings.  Admittedly, the claimant has required emergency care for breathing
         difficulties; however, it is noted that this hospitalization coincided with a time
26       when the claimant was short of her Albuterol inhalers.  Otherwise, the claimant
         testified that she continues to smoke seven to ten cigarettes per day despite
27       multiple clinical warnings to stop smoking.

28

18

Despite allegations of weight problems with joint pains, physical examinations have routinely revealed no significant findings with little, if any, mention of leg swelling or edema.  In fact, the claimant demonstrated normal gait and full strength in all extremities during an internal medicine evaluation.

These allegations are inconsistent with the minimal conservative treatment the claimant has received.  The claimant has not required any referrals to orthopedic or respiratory specialists.  She has not [had] frequent changes in pain medications, required physical therapy, surgery, steroid injections, use of a TENS unit, chiropractic adjustments, respiratory intubations, frequent changes in inhaled medications, the use of a breathing machine, supplemental oxygen or any other alternative measures to control her symptoms.

The claimant's allegations of an inability to sustain any work activity are inconsistent with her ongoing attempts to seek and obtain employment since her alleged onset date.  For example, in Mach 2009, she told consultative psychiatric examiner Dr. Daigle that she was looking for employment in computers or other office work.  In 2010, the claimant worked full time as a monitor at a women's shelter in 2010 [sic] for a couple of months.  She helped with showers, meals, clean up and checking property.  She stated she was unable to continue this work because it was too stressful.  However, she does not state that this work was too physically demanding.  The record further documents that she worked as a home health aide for two different clients in early 2012 and this work ended because of the deaths of her clients, not because of her mental or physical conditions.

These allegations are also inconsistent with her activities.  The record shows she is able to care for herself.  She is able to cook meals for herself and her roommates.  She washes dishes, sweeps, mops, does laundry, and makes shopping lists.  She is able to go out alone, attends meetings, handles her bills, money and food stamps, and rides the bus.  Clearly, the above activities are consistent with the determination of an ability to perform light work activity.  Although the claimant may not be able to perform heavier type exertional activities, an inability to perform to [sic] medium and heavy work does not preclude all work activity.

The claimant's allegations are inconsistent with the medical opinion of examining internist Joseph Garfinkel, M.D., which indicates that she has considerable work-related abilities despite her impairments.

. . .

The claimant's allegations of mental functioning difficulties are inconsistent with her cursory and sporadic attempts in seeking treatment.  The claimant's documented mental health care history includes a March 4, 2009 intake assessment; a March 23, 2009 medication service plan meeting; an October 28, 2010 intake assessment and examination; and a November 22, 2010 examination.  She did not seek treatment again until January 2012 when she began outpatient counseling until August 2012.  SSR 96-7p indicates that had the claimant genuinely felt debilitating symptoms, it would have been more likely that she

19

1    would have more diligently sought and maintained the appropriate treatment.

2    Similarly, the claimant's allegations are inconsistent with the mild findings that
3    treating sources have noted upon mental status examination.  The claimant has also
     reported improvement with psychiatric medications.  Therapy notes reveal that she
4    made good progress with therapy and medication.

5    Moreover, her general credibility is questioned in that symptom magnification was
     confirmed by psychological testing in 2006.  Dr. Weil noted that the claimant's
6    scores on the Beck Depression Inventory, Minnesota Multiphasic Personality
7    Inventory, and Millon Behavioral Medicine Diagnostic Inventory were high in
     relationship to her presentation and clinical examination.  Dr. Weil noted her
8    exaggeration of symptoms.

9    The claimant's mental allegations are inconsistent with the medical opinion of
     examining psychiatrist Bradley Diagle, M.D. . . .
10

11   . . .

12   The claimant's allegations are partially supported by her prescriptions for
     psychiatric medications.  The claimant's allegations are also partially supported by
13   a global assessment of functioning (GAF) score as low as 45, which corresponds
     to serious symptoms or any serious impairment in social, occupational, or school
14   functioning.  However, the therapist who gave the claimant this low GAF score
15   otherwise noted that the claimant has intact memory, intact abstraction, and linear
     though process.  Accordingly, while the claimant may experience some
16   psychiatric-based symptoms, the weight of the evidence indicates that she is
     nonetheless able to perform a wide range of unskilled work.
17

18   AT 25-27 (citations to the record omitted).

19       First, the ALJ determined that plaintiff's impairments were well controlled with

20   medication and that the relatively conservative treatment she received undermined her credibility.

21   These were clear and convincing reasons for discounting plaintiff's subjective claim that her

22   impairments caused her to be disabled.  Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001,

23   1006 (9th Cir. 2006) (a condition that can be controlled or corrected by medication is not

24   disabling for purposes of determining eligibility for benefits under the Act); Tommasetti v.

25   Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (reasoning that a favorable response to

26   conservative treatment undermines complaints of disabling symptoms); Parra v. Astrue, 481 F.3d

27   742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment

28   is sufficient to discount a claimant's testimony regarding severity of an impairment."); Fair v.

1   Bowen, 885 F.2d 597, 604 (9th Cir. 1989).  The record demonstrates that the treatment provided

2   by plaintiff's treating physicians largely consisted of a medication regimen and psychological

3   counseling, which generally kept plaintiff's symptoms under control, and recommendations that

4   she eat a low-fat diet, lose weight, and stop smoking.  E.g., AT 319, 414, 445-48 463, 486-88.

5   There is no evidence in the record indicating that plaintiff's physicians recommended more

6   intensive treatment or even referred plaintiff to a specialist for purposes of determining that such

7   treatment would be necessary.  While plaintiff did receive emergency hospital treatment for

8   breathing difficulties in 2009, as the ALJ highlighted, this was a short-lived incident resulting

9   from plaintiff having run out of her Albuterol medication.  AT 447. The record indicates that

10  plaintiff did not suffer a similar episode after she had been provided a nebulizer and that her

11  breathing complications had largely ceased.  See AT 416, 467.

12          Plaintiff argues that it was improper for the ALJ to rely on the fact that plaintiff received

13  conservative treatment under the circumstances presented by this case because it is clear that

14  plaintiff could not have afforded better treatment than what she received given her unstable

15  housing situation and her reliance on county-provided treatment.  While plaintiff is correct that a

16  claimant's inability to pay for or otherwise obtain a particular course of treatment cannot serve as

17  a basis for using the absence of that treatment against the claimant, Orn, 495 F.3d at 638, there is

18  no evidence in the record here that plaintiff was unable to obtain a more effective course of

19  treatment due to a lack of medical insurance, an ability to pay, or her financial situation more

20  generally.  Indeed, plaintiff's treating records indicate that she received both mental and physical

21  medical care throughout the course of the relevant period.  Furthermore, as discussed above, the

22  treatment recommendations her physicians made and the course of treatment she ultimately

23  underwent consisted largely of a regime of medications and psychological counseling that

24  adequately controlled her symptoms.  Accordingly, there was substantial evidence to support the

25  ALJ's determination that plaintiff's testimony alleging disability conflicted with her conservative

26  course of treatment and the fact that that treatment adequately controlled her symptoms.

27  /////

28  /////

21

1    The ALJ also appropriately determined that plaintiff's reported activities during the

2    relevant period, including a brief period of work as an in home care worker, undermined her

3    claims that her impairments were totally disabling.  "While a claimant need not vegetate in a dark

4    room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the

5    claimant reports participation in everyday activities indicating capacities that are transferable to a

6    work setting . . . . Even where those activities suggest some difficulty functioning, they may be

7    grounds for discrediting the claimant's testimony to the extent that they contradict claims of a

8    totally debilitating impairment."  Molina, 674 F.3d at 1112-13 (citations and quotation marks

9    omitted); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered

10   claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and

11   boyfriend, and manage her finances and those of her nephew in the credibility analysis); Morgan

12   v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding

13   claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his

14   friend's child" was a specific finding sufficient to discredit the claimant's credibility).

15   Here, plaintiff stated that she is able to cook meals for herself and her roommates, wash

16   dishes, sweep, mop, and do laundry.  AT 47, 51-52, 409, 414.  Furthermore, plaintiff testified that

17   she briefly worked two different full-time jobs during the relevant period; one as an in home

18   caretaker for two individuals, and the other as a monitor at a homeless shelter, where she prepared

19   meals, cleaned up dormitories, and helped clients with showering.  AT 47-49.  While plaintiff

20   also testified that she quit her job at the shelter due to the mental stress it caused her, AT 96, the

21   fact that she was able to perform the physical requirements of that job indicated that she is less

22   physically restricted than what she alleged elsewhere in her testimony.  Accordingly, there existed

23   substantial evidence in the record from which the ALJ could permissibly draw the conclusion that

24   plaintiff's daily activities conflicted with her statements regarding the extent of her physical

25   impairments, therefore damaging her overall credibility.

26   The ALJ further reasoned that plaintiff's testimony generally conflicted with the medical

27   evidence in the record.  This too was a factor the ALJ was permitted to consider in support of his

28   adverse credibility determination.  See Burch, 400 F.3d at 681 ("Although lack of medical

1    evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can

2    consider in his credibility analysis.").  For instance, plaintiff testified that she had pain in her back

3    and knees that markedly restricted her ability to sit, bend, lift, and squat, AT 58-60, 82, but Dr.

4    Garfinkel's examination notes show that she had a normal gait, normal range of motion, negative

5    straight leg raise testing, and normal strength, sensation, reflexes, and coordination.[3]  AT 416-17.

6    Similarly, plaintiff claimed that she suffered from extensive psychiatric symptoms, but the

7    objective findings from the psychological tests conducted by the examining physicians indicated

8    that her mental impairments were not so limiting.  E.g., AT 408-12.

9          Plaintiff contends that it was improper for the ALJ to refer to her smoking habit as a

10   reason to undermine her credibility because it is likely that she was so addicted to cigarettes that

11   she continued smoking even in the face of her breathing problems.  In support of this argument,

12   plaintiff cites to the Ninth Circuit Court of Appeals' decision in Bray v. Comm'r of Soc. Sec.

13   Admin., where the Court indicated that an ALJ's consideration of a claimant's continued smoking

14   habit as a reason to support an adverse credibility determination may be improper in certain

15   circumstances.  554 F.3d 1219, 1227 (9th Cir. 2009).  However, in that case, like here, the ALJ

16   had provided multiple bases for discounting the claimant's testimony that all had ample support

17   from the record.  Id.  Accordingly, the Ninth Circuit Court of Appeals held that "the ALJ's

18   reliance on [the claimant's] continued smoking, even if erroneous, amount[ed] to harmless error."

19   Id.  Therefore, even assuming, without deciding, that the ALJ erred by using plaintiff's smoking

20   as a basis for disbelieving her testimony, it would be harmless in light of the other valid reasons

21   the ALJ provided in support of his credibility determination.

22   /////

23

---

24   [3] Plaintiff contends that the fact that she exhibited normal gait and strength during that
     examination in 2009 is of little relevance because she proposed to amend her alleged onset date to
25   February 3, 2012.  However, the only evidence plaintiff points to in support of an amended onset
     date is a March 11, 2013 letter sent from her counsel to the ALJ stating that plaintiff would be
26   "willing to amend her alleged onset date to February 3, 2012."  AT 328.  There is no evidence
     that plaintiff ever actually amended her alleged onset date.  Furthermore, the ALJ's decision was
27   based on the initial alleged onset date of December 1, 2007.  AT 31.  Therefore, these objective
     medical findings fell well within the relevant period considered by the ALJ.

1   In sum, the ALJ provided multiple clear and convincing reasons in support of his adverse

2   credibility determination that were amply supported by the record.[4]  Therefore, the ALJ did not

3   err in finding plaintiff's testimony less than fully credible.

4       D.     <u>The ALJ did not err in Considering Samantha Earnshaw's Third Party Report</u>

5   Finally, plaintiff argues that the ALJ erred by failing to describe what, if any, weight he

6   accorded to the third party report provided by Samantha Earnshaw.

7   "[L]ay witness testimony as to a claimant's symptoms or how an impairment affects

8   ability to work is competent evidence, and therefore cannot be disregarded without comment."

9   <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir. 1996); <u>see also</u> <u>Dodrill v. Shalala</u>, 12 F.3d 915,

10   918-19 (9th Cir. 1993) (friends and family members in a position to observe a plaintiff's

11   symptoms and daily activities are competent to testify to condition).  "If the ALJ wishes to

12   discount the testimony of the lay witnesses, he must give reasons that are germane to each

13   witness."  <u>Dodrill</u>, 12 F.3d at 919.  Nevertheless, the ALJ is not required "to discuss every

14   witness's testimony on a individualized, witness-by-witness basis."  <u>Molina</u>, 674 F.3d at 1114.

15   Indeed, while the applicable regulations require "the ALJ to consider testimony from family and

16   friends submitted on behalf of the claimant," they "do not require the ALJ to provide express

17   reasons for rejecting testimony from each lay witness."  <u>Id.</u> (citing 20 C.F.R. §§ 404.1529(c)(3),

18   404.1545(a)(3)).  "Rather, if the ALJ gives germane reasons for rejecting testimony by one

19   witness, the ALJ need only point to those reasons when rejecting similar testimony by a different

20   witness."  <u>Molina</u>, 674 at 1114.

21   When the ALJ provides clear and convincing reasons for discounting a claimant's

22   testimony and the third-party lay witness's testimony is similar to the claimant's testimony, the

23   ALJ's reasons for discounting the claimant's testimony may also constitute germane reasons for

24   rejecting the third-party lay witness's testimony.  <u>Valentine v. Comm'r Soc. Sec. Admin.</u>, 574

25   F.3d 685, 694 (9th Cir. 2009); <u>see also</u> <u>Molina</u>, 674 at 1114.  Furthermore, even when the ALJ

26

27   [4] Because the reasons discussed above are sufficient to support the ALJ's adverse credibility
    determination, the court declines to consider the ALJ's remaining reasons for discounting
28   plaintiff's credibility.

1  errs by failing to explain his or her reasons for disregarding a layperson's testimony, such error is

2  harmless if that layperson's testimony largely reflects the limitations described by the claimant

3  and the ALJ provides clear and convincing reasons for discounting the claimant's testimony,

4  because the layperson's testimony in such a circumstance is "inconsequential to the ultimate

5  nondisability determination in the context of the record as a whole." Molina, 674 F.3d at 1122

6  (quotation marks omitted).

7       Here, the ALJ summarized the third-party statement of Samantha Earnashaw in detail,

8  clearly indicating that he considered the information.  AT 25.  Moreover, Samantha Earnshaw's

9  report essentially echoed plaintiff's own testimony and, as discussed above, the ALJ already

10  provided specific, clear, and convincing reasons for discounting plaintiff's testimony, which are

11  equally germane to this third-party testimony.  As such, any error in not explicitly re-stating, or

12  incorporating by reference, the reasons given for discounting plaintiff's testimony with respect to

13  this third party statement was harmless and remand is not warranted.  See Molina, 674 F.3d at

14  1115-22.

15  V.    CONCLUSION

16       For the reasons stated herein, IT IS HEREBY ORDERED that:

17       1.  Plaintiff's motion for summary judgment (ECF No. 16) is denied;

18       2.  The Commissioner's cross-motion for summary judgment (ECF No. 19) is granted;

19  and

20       3.  Judgment is entered for the Commissioner.

21  Dated:  January 28, 2016

22  _____
    CAROLYN K. DELANEY
23  UNITED STATES MAGISTRATE JUDGE

24

25

26

27  11 hives2953.ss

28